1 LUCAS VALLEY LAW
   MARK K. de LANGIS (SBN 190083)
2 2110 Elderberry Lane
   San Rafael, California 94903
3 Telephone: (415) 472-3892
   Facsimile: (415) 472-3977
4 mdelangis@lucasvalleylaw.com

5 Attorneys for Petitioners
   AMERICAN PRESIDENT LINES, LTD. and
6 APL CO. Pte., LTD.

7

8                UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10

11

12                                             C 07 5267

13 In the Matter of the Arbitration between      No.

14 AMERICAN PRESIDENT LINES, LTD., a
15 corporation, and APL CO. Pte., LTD., a        PETITION FOR ORDER CONFIRMING
   corporation,                                  AWARD OF ARBITRATOR
16
           Petitioners,                          [9 U.S.C. section 9]
17
       v.
18
19 ED LIM, an individual, d/b/a OPTIMUM
   DYNAMICS,
20
           Respondent.
21

22

23

24    Petitioners AMERICAN PRESIDENT LINES, LTD. and APL CO. Pte., LTD.

25 (collectively "APL") respectfully allege:

26

1. Petitioner American President Lines, Ltd. now is, and at all times herein mentioned was, a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in the City of Oakland, California.

2. Petitioner APL Co. Pte., Ltd. now is, and at all times herein mentioned was, a corporation duly organized and existing under the laws of Singapore, registered to do business in the State of California.

3. On information and belief, respondent Ed Lim is an individual doing business as Optimum Dynamics, who was at all material times mentioned herein, a resident of California.

## JURISDICTION

4. The jurisdiction of this Court is invoked under Title 9, United States Code, and particularly Section 9 thereof, and under Title 28, United States Code, section 1333, as a case within the admiralty and maritime jurisdiction of this Court.

## BACKGROUND

5. On or about October 30, 2002, petitioners and respondent entered into a written maritime contract for the shipment of respondent's cargo by sea from the United States to the Philippines. (A true and correct copy of the applicable Service Contract No. WB02/0331 is attached hereto, marked Exhibit "A," and is made a part hereof.)

6. This contract evidences a series of transactions involving international maritime commerce, as is shown by its express terms.

7. APL on the one hand, and Ed Lim d/b/a Optimum Dynamics ("Lim") on the other, agreed in the contract, at section 4, to resolve any dispute arising under the contract by submitting the dispute to arbitration in San Francisco, California, before an arbitrator of the American Arbitration Association. In addition, APL and Lim agreed that the decision of the arbitrator "shall be final, binding and not subject to further review." (Service Contract, at Ex. A,

1 § 4(a), attached hereto.)

2     8.     The contract, at Section 4, further provides that the decision of the arbitrator may be enforced by any court, tribunal, or other forum as may properly assert jurisdiction, and that the parties expressly consent and agree that the United States District Court for the Northern District of California shall have personal jurisdiction over the parties to the contract. (Service Contract, at Ex. A, § 4(b), attached hereto.)

    9.     On February 23, 2004, APL invoiced Lim the sum of $8,050, which was then, and still is, due pursuant to the terms of Service Contract Number WB02/0331. (A true and correct copy of the February 23, 2004 invoice is attached hereto as Exhibit "B," and made a part hereof.)

## THE ARBITRATION

    10.     Pursuant to the arbitration agreement, as detailed in section 4 of the above-described contract, APL initiated arbitration proceedings with the American Arbitration Association ("AAA") on April 30, 2007.

    11.     Following due notice to both APL and Lim, including preliminary hearings by telephone, an arbitration (via documents per the AAA rules and by order of the arbitrator) was duly conducted in on July 31, 2007, before the AAA appointed arbitrator, Diana L. Van De Car, Esq.

    12.     On September 12, 2007, the arbitrator awarded petitioners American President Lines, Ltd. and APL Co. Pte., Ltd. the principal amount of $8,050, attorneys' fees of $2,700 and costs of $1,700, for a total award of $12,450. (A true and correct copy of the arbitrator's award dated September 12, 2007, is attached hereto as Exhibit "C," and made a part hereof.)

    13.     Lim has failed to satisfy the arbitration award in the time since it was made. Therefore, a judgment on the arbitration award is needed to permit APL to enforce it.

///

14. This petition is authorized by the terms of the arbitration clause within the maritime contract, Section 9 of the Federal Arbitration Act, and the award itself.

WHEREFORE petitioners AMERICAN PRESIDENT LINES, LTD. and APL CO. Pte., LTD. pray as follows:

1. That an order of this Court be made confirming the Award of Arbitrator for the amount of $12,450;
2. That judgment be entered in conformity therewith, for the amount owing of $12,450, pursuant to the Award of Arbitrator;
3. That APL be allowed costs incurred herein;
4. The Court award APL prejudgment and post-judgment interest on all sums as provided by law; and
5. That APL be awarded such other and further relief as may be proper.

DATED: October 15, 2007

By: _____
Mark K. de Langis
Attorney for Petitioner
AMERICAN PRESIDENT LINES, LTD and
APL CO. Pte., LTD.

PETITION FOR ORDER CONFIRMING AWARD OF ARBITRATOR

# EXHIBIT A

SERVICE CONTRACT NO. WB02/0331

Attn: Kaela

ESSENTIAL TERMS PUBLICATION:
ESSENTIAL TERMS NO.

SERVICE CONTRACT TARIFF FMC NO.20
ET. NO. _____
TARIFFS OF GENERAL APPLICABILITY:
APL FMC NO. AP1

This Service Contract ("Contract") is made and concluded by and between APL, ("Carrier") and Merchant and each of its affiliates identified herein (each and collectively referred to herein as "Merchant"), whereby the parties mutually agree as set forth in pages attached hereto.

In the event this Contract is signed on behalf of the Merchant by an agent, the undersigned agent warrants that 1) it is authorized and empowered by the Merchant to negotiate and enter into this Contract on behalf of the Merchant, 2) it is authorized and empowered to represent and act on behalf of the Merchant in respect to all activities undertaken within the scope of this Contract or related thereto, including the booking, carriage and handling of cargo and payment of freight and other charges, and 3) all representations made in this Contract regarding the Merchant's status as a shipper are true and correct.

Carrier

(Signature)  Date: 10/30/02
Name: Carolyn Almquist
Title: Director

APL Co. Pte Ltd. in its Individual Capacity and
as Agent for American President Lines Ltd.
1111 BROADWAY
OAKLAND, CA, 94607

Merchant

(Signature)  Date: 10/30/02
Name: Eddie Lim
Title:

EDDIE LIM
61 BELMAR STREET
DALY CITY, CA, 94015
Tel No:
Fax No:
Customer Number: 417713

Affiliates of Merchant covered by this contract:
None

Shipper Certification

Pursuant to FMC regulation 46 C.F.R. 530.6, Merchant, by execution of this Contract, certifies its status and that of all its affiliates authorized to utilize this contract as:

(1) _X_ THE OWNER OF THE CARGO
(2) ____ MEMBER OF A SHIPPERS' ASSOCIATION
(3) ____ NON-VESSEL-OPERATING COMMON CARRIER
(4) ____ OTHER (Specify:_____)

If status is #2 above, Merchant certifies that any named members in this contract who are NVOCCs are so identified and that they have tariff(s) and bond(s) on file with the FMC as required by law and regulation.

If status is #3 above, Merchant certifies that any such NVOCC's have tariff(s) and bond(s) on file with the FMC in full compliance with FMC regulations and that copies of tariff pages reflecting same have been provided to Carrier.

Applicable Boilerplate: 101.A4

**SERVICE CONTRACT NO. <u>WB02/0331</u>**

| | |
|---|---|
| ESSENTIAL TERMS PUBLICATION: | SERVICE CONTRACT TARIFF FMC NO.20 |
| ESSENTIAL TERMS NO. | ET. NO. <u>WB02/0331</u> |
| | TARIFFS OF GENERAL APPLICABILITY: |
| |   APL FMC NO. AP1 |

This Service Contract ("Contract") is made and concluded by and between APL, ("Carrier") and Merchant and each of its affiliates identified herein (each and collectively referred to herein as "Merchant"), whereby the parties mutually agree as set forth in pages attached hereto.

In the event this Contract is signed on behalf of the Merchant by an agent, the undersigned agent warrants that 1) it is authorized and empowered by the Merchant to negotiate and enter into this Contract on behalf of the Merchant, 2) it is authorized and empowered to represent and act on behalf of the Merchant in respect to all activities undertaken within the scope of this Contract or related thereto, including the booking, carriage and handling of cargo and payment of freight and other charges, and 3) all representations made in this Contract regarding the Merchant's status as a shipper are true and correct.

| Carrier | Merchant |
|---|---|
| _____ | _____ |
| (Signature)    Date: Oct 30, 2002 | (Signature)    Date: Oct 30, 2002 |
| Name: Carolyn Almquist | Name: Eddie Lim |
| Title: Director | Title: |
| | |
| APL Co. Pte Ltd. In Its Individual Capacity and as Agent for American President Lines Ltd. | EDDIE LIM |
| 1111 BROADWAY | 61 BELMAR STREET |
| OAKLAND, CA, 94607 | DALY CITY, CA, 94015 |
| | Tel No: |
| | Fax No: |
| | Customer Number: 417713 |
| | |
| | Affiliates of Merchant covered by this contract: |
| | None |

<u>Shipper Certification</u>

Pursuant to FMC regulation 46 C.F.R. 530.6, Merchant, by execution of this Contract, certifies its status and that of all its affiliates authorized to utilize this contract as:

(1) **X**    THE OWNER OF THE CARGO
(2) _____    MEMBER OF A SHIPPERS' ASSOCIATION
(3) _____    NON-VESSEL-OPERATING COMMON CARRIER
(4) _____    OTHER (Specify:_____)

If status is #2 above, Merchant certifies that any named members in this contract who are NVOCCs are so identified and that they have tariff(s) and bond(s) on file with the FMC as required by law and regulation.

If status is #3 above, Merchant certifies that any such NVOCC's have tariff(s) and bond(s) on file with the FMC in full compliance with FMC regulations and that copies of tariff pages reflecting same have been provided to Carrier.

Applicable Boilerplate: <u>101.A4</u>

# SERVICE CONTRACT - SC NO. WB02/0331

**Table Of Contents**

Appendix B - TransPacific Westbound ...................................................................................................... 6
Appendix A - TransPacific Eastbound (reserved)
Appendix C - TransAtlantic Eastbound (reserved)
Appendix D - TransAtlantic Westbound (reserved)
Appendix E - Latin America Northbound (reserved)
Appendix F - Latin America Southbound (reserved)
Appendix G - Asia/Europe (reserved)
Appendix H - Europe/Asia (reserved)
Appendix I - Intra Asia (reserved)
Appendix J - Latin America - Eastbound, Westbound, Intra Latin (reserved)
Appendix K - Intra Europe (reserved)
Appendix Affiliates (reserved)

*Version October 1, 2002* 101A4

**SERVICE CONTRACT**

1. <u>APPLICATION OF CONTRACT</u>

(a) This contract applies with respect to the transportation of Merchant's commodities listed in the appendix attached hereto (the "Appendix") between the origin and destination locations listed in the Appendix. This contract, its appendices and exhibits thereto, together with the terms and conditions of Carrier's bill of lading and tariffs (to the extent applicable after giving effect to this Contract and exhibits referenced herein) embodies the entire understanding between the parties.  There are no other agreements, understandings, conditions, warranties or representations, oral or written, express or implied, with reference to the subject matter of this Contract which are integrated herein.  No modification hereof shall be of any force or effect unless reduced to writing making reference to this Contract and executed by the parties and duly filed with the U.S. Federal Maritime Commission. In the event of any conflict among the terms and conditions of this service contract and the bill of lading, the order of governance shall be, first, the bill of lading, and, second, this service contract.

(b) For purposes of determining whether a shipment is made during the term of this contract, the date when the shipment is received by the Carrier or its agent shall govern.  A shipment shall not be considered as "received" until the full bill of lading quantity has been received.

(c) Merchant represents it is authorized and empowered to enter into this service contract by and on behalf of each and every affiliate identified on the attached schedule, if any, and to represent such affiliates in all matters relating to carriage of cargo tendered hereunder.

(d)  For all cargo movements hereunder from or to the People's Republic of China, Japan, Taiwan and Mexico, the term "Carrier" shall refer to American President Lines, Ltd., a Delaware USA corporation.  For cargo movements from or to all other locations, the term "Carrier" shall refer to APL Co. Pte Ltd, a Singapore corporation.  APL Co. Pte Ltd hereby assumes the obligations, if any, of American President Lines, Ltd. under article 6 below, including the obligation to pay liquidated damages under subsection 6(b).

2. <u>EFFECTIVE DATE AND TERM</u>

(a) This service contract shall become effective as of the date specified on page 1 hereof, or that date on which it is fully executed and filed with the US Federal Maritime Commission, whichever is later.  It shall continue in effect until the expiration date, or lapse of the period, specified in the Appendix.

(b) Carrier may, at any time after Merchant has met the Minimum Volume Commitment ("MVC") set forth in Appendix to the Contract, terminate this Contract, on thirty (30) calendar days written notice to Merchant.

3. <u>MINIMUM VOLUME COMMITMENT; DEAD FREIGHT; BOOKING</u>

(a) Merchant shall tender not less than the MVC during the term hereof.  Shipments shall be deemed within the scope of this contract and shall be counted toward the MVC if made by Merchant's parent, subsidiary, or other affiliated companies or entities under common control, or by an authorized agent in behalf of any such entity, all of which entities must be identified on signature page or Appendix. Merchant shall remain responsible to carrier for all obligations of non merchant parties shipping cargo under this agreement.

(b) If Merchant fails to tender shipments in sufficient quantity to meet Merchant's undertaking as set forth in the foregoing paragraph (a), Merchant shall, within 30 calendar days of receipt of Carrier's invoice therefore, pay deadfreight in the amount of $350 for each FEU by which the Minimum Volume Commitment exceeds the volume actually tendered.

(c) No volume shipped under this contract shall apply toward any time/revenue or time/volume requirement of any freight tariff or other service contract published by or on behalf of Carrier.

(d) Merchant shall book its space requirements for shipments tendered under this contract not less than 7 calendar days prior to the scheduled arrival of the Carrier's vessel at port of loading.  If the shipments are

offered upon less than 7 calendar days' notice, Carrier may accept such shipments, which shall then count toward the MVC or decline the shipments, at its option.

4. DISPUTES

(a) Any and all disputes arising out of or in connection with this Contract, including any failure by the Merchant to pay or by the Carrier to perform as required hereunder, shall be resolved by arbitration in San Francisco, California, or such other place as the parties to the dispute may mutually agree under the rules of the American Arbitration Association.  The arbitration shall be before a single arbitrator to be appointed by the parties to the dispute or, failing such agreement and upon the application of any party to the dispute, by the American Arbitration Association.  There shall be no restrictions on the nationality of the arbitrator.  Except by agreement of the parties to the dispute, there shall be no prehearing discovery.  The costs and expenses of the arbitration (including reasonable attorney's fees and costs) shall be borne by the non-prevailing party.  The decision of the arbitrator shall be final, binding and not subject to further review.

(b) The decision of the arbitrator may be enforced by any court, tribunal or other forum as may properly assert jurisdiction.  The parties hereto expressly consent and agree that the United States District Court for the Northern District of California has personal jurisdiction.

5. RATES and CHARGES

   (a) Carrier shall assess the freight rates and charges set forth or referenced in the Appendix to all of the Merchant's shipments tendered under this contract.

   (b) Except to the extent that the freight rates set forth in the Appendix expressly include or are not subject to other charges, all of the items contained in the Tariff(s) listed in the Appendix shall apply to and govern shipments tendered under this contract, including but not limited to: bunker fuel, currency exchange and other surcharges, and all arbitraries, storage, containerized cargo demurrage, equipment detention, and all other charges, together with all additions, deletions or modifications thereof, all Tariff rules and provisions, and all supplements thereto and reissues thereof.

   (c) If at any time during the term of this service contract an increase in the applicable charges or surcharges provided in the Tariff occurs, which would otherwise apply to Merchant's shipments in the absence of this service contract, the charges or surcharges specified or incorporated by reference in the Appendix shall be increased as of the same date it becomes effective in the Tariff.

   (d) If at anytime during the term of this service contract a General Rate Increase (GRI) or an increase in a specific commodity rate occurs in the Tariff, which would otherwise apply to Merchant's shipments in the absence of a service contract, then the GRI or commodity rate increase shall be added to and included in the rates and charges set forth or incorporated by reference in the Appendix, as of the same date it becomes effective in the Tariff.

6. SERVICE; CARRIER LIABILITY

(a) In consideration for Merchant's MVC, Carrier shall provide container equipment for booked shipments and shall accept each shipment timely offered by Merchant in order to meet Merchant's MVC; provided that carrier shall have no obligation with respect to cargo tendered in excess of an amount equal to 15% of the annualized MVC during any of the sequential 30 day periods covered by this Contract, the first of which commences with the effective date of the Contract. For purposes of this contract, "timely offered" shall mean shipments booked pursuant to the minimum notice provision of clause 3 (d).

(b) In the event that Carrier fails to provide container equipment, or fails to accept each shipment timely offered, within Merchant's MVC, the MVC shall be reduced by the volume tendered, except as provided in paragraph (a) above, but not carried or container equipment not supplied in order to meet Merchants MVC. Further, if Carrier fails to perform its service obligations set forth in paragraph (a) above, the parties acknowledge that Merchant may suffer commercial damages which are difficult to predict. Accordingly, the Carrier shall pay liquidated damages in the amount of US$350 per FEU by which Carrier's service failure results in carriage of less than the MVC; provided however, the MVC for the Carrier shall not be reduced by any FEU by which the Merchant's obligation to tender the MVC

4 of 6

was reduced due to Carrier service failures.

(c) Carrier undertakes to provide the services and remedies identified in paragraph (a) and (b) above. Carrier does not undertake to perform Merchant's requirements for ocean transportation or to supply container equipment other than on a mutually agreed, space-available basis after Carrier's receipt and transportation of Merchant's MVC or during a period when no MVC is expressly provided.

(d) Except as expressly set forth in this section, shipments under this contract shall be subject to all of the terms and conditions of Carrier's bill of lading in effect at the time of shipment and Carrier's liability for cargo loss, damage, delay, misdelivery or other breach of the contract of carriage, if any, shall be determined exclusively under the terms and conditions of the bill of lading.

7. FORCE MAJEURE

If Merchant is prevented from tendering the MVC or if Carrier is prevented from performing its service undertaking as set forth in clause 6 above as the result of a condition or cause beyond its control, including but not limited to, labor disputes, embargoes, casualties (whether or not the negligent acts or omissions or fault of a party contributed thereto), acts of God, civil disturbances, act or default of the other party and restraint of laws or governments, but excluding loss of market or other commercial contingencies, such failure to perform by suppliers or contractors shall be excused to that extent but no further.  The party claiming excused performance shall promptly, but in any event within 7 working days, notify the other at the time of commencement and termination of an event excusing its performance, together with a statement estimating the effect of such event on its ability to perform.  If an event wholly or partially preventing the performance of a party shall continue for more than 30 calendar days, either party may terminate this agreement upon delivery of written notice of termination.

8. COMPENSATION and PAYMENT of FREIGHT and CHARGES

Carrier's freight charges computed in accordance with the Appendix, demurrage, detention, surcharges, arbitraries, and all other charges applicable under the Tariff shall be paid in strict accordance with the Tariff and bill of lading before the release of the shipments on which charges accrued, or, in the case of prepaid shipments under negotiable bills of lading, before release of the original bills of lading.

9. SHIPMENT RECORDS

The shipment records required to be maintained under 46 CFR Section 530.15 shall consist of copies of Merchant's bills of lading, or computer generated bills of lading, any force majeure correspondence and notices, and any correspondence concerning Merchant's or Carrier's failure to perform which affects Merchant's entitlement to the contract rates, all of which shall be maintained by Carrier at its offices.  Upon request from Carrier, Merchant shall promptly submit to the Carrier information and documents sufficient to verify the quantity and nature of cargo shipped under this contract.  Shipping documents provided by Merchant governing individual shipments under this contract and all copies thereof shall bear a notation showing the service contract number of this contract.  The designation by Merchant of cargo as contract cargo by affixing the contract number on the shipping documents provided by Merchant shall be made at the time of the issuance of the bill of lading and shall be conclusive.

The Merchant, and the Carrier, shall cooperate in maintaining shipment records documents and reports as they may from time to time mutually determine to be administratively desirable.  The person who will respond to requests on behalf of the Carrier to make shipping records available to FMC is the Carrier's Tariff Publishing Officer, 1111 Broadway, Oakland, CA 94607, Telephone No. (510) 272-7098.

APPENDIX B

SERVICE CONTRACT No: WB02/0331

1. **ORIGIN:**
   UNITED STATES

2. **DESTINATION:**
   PHILIPPINES

3. **COMMODITIES:**
   A. Automobiles, N.O.S.

4. **MINIMUM VOLUME COMMITMENT:**
   25 FEU

5. **SERVICE COMMITMENTS:**
   The service commitment applicable hereto is that set forth in Article 6 of this contract.

6. **CONTRACT RATES:**
Rates in USD unless otherwise noted. Rates subject to applicable arbitraries, outports and inland charges as specified in applicable tariff unless otherwise noted in paragraph 6 and 10 of this appendix.

**Automobiles, N.O.S.**
**Pacific Coast Ports (CY)**

| Destination | | D20 | D40 |
|---|---|---|---|
| Philippines | CY | 760 | 950 |
| Subic Bay, Philippines | CY | 960 | 1200 |
| Batangas, Philippines | CY | 1040 | 1300 |

7. **LIQUIDATED DAMAGES:**
   The liquidated damages for non-performance hereunder are set forth in Articles 3 (b) and 6 (b) of this contract.

8. **EXPIRATION DATE OR PERIOD OF TERM:**

   Commencement:       Oct 31, 2002
   Effective through:  Oct 31, 2003

9. **SIGNATURE**
   See Signature Page

**10. ASSESSORIALS**
a) The contract rates set out in paragraph 6 are inclusive of the following extra charges where applicable:
   None

b) The contract rates set out in paragraph 6 are not subject to the following extra charges where applicable:
   **1. Terminal Handling Origin(THC)**

c) The following extra charges shall apply during the term of this contract:

   All other charges not listed above shall apply pursuant to Article 5 (b) of this contract.

**101 BOILER PLATE**
   101.A4  applies

# EXHIBIT B

# INVOICE

AMERICAN PRESIDENT LINES, LTD.

| | | INVOICE | | COGMD3K458 |
|---|---|---|---|---|
| Customer # | Currency | Invoice Description | Invoice Date | Revenue Acct#/C C |
| COGOPTIMUM | US$ | DEAD FREIGHT | 2/23/2004 | 33202130 |
| | | | | 9771999 |

Optimum Dynamics, Inc.
61 Belmar Street
Daly City, CA 94015

Please reference our invoice number and make check payable to:
AMERICAN PRESIDENT LINES, LTD
116 INVERNESS DR. EAST, STE 400
ENGLEWOOD, CO 80112

ATTN: FREIGHT CASHIER

| Description | | Unit Count | Unit Price | Amount |
|---|---|---|---|---|
| Service Contract No | WB02/0331 | | | |
| MQC: | 25 | | | |
| FEUs Shipped: | 2 | | | |
| FEUs Short: | 23 | | | |
| Dead Freight per FEU: | 350.00 | 23 | $350.00 | $8,050.00 |
| | | | | |
| Amount Due   $ | 8,050.00 | | | |
| | | | | |
| PAYMENT DUE UPON RECEIPT | | | Invoice Total  $ | 8,050.00 |

| | PAYMENT DUE UPON RECEIPT | | Invoice Number | COGMD3K458 |
|---|---|---|---|---|
| Customer # | Customer Name | Rec. Type | Invoice Date | Amount Due |
| COGOPTIMUM | Optimum Dynamics, Inc. | RDFT | 2/23/2004 | $   8,050.00 |

Make checks payable and remit to:
AMERICAN PRESIDENT LINES, LTD
116 INVERNESS DR. EAST, STE 400
ENGLEWOOD, CO 80112

ATTN: FREIGHT CASHIER

# EXHIBIT C

# AMERICAN ARBITRATION ASSOCIATION
## Commercial Arbitration Tribunal

In the Matter of the Arbitration between

Re: 74 125 E 00443 07 JENF
American President Lines, Ltd. and APL Co., PTE, Ltd.
vs
Ed Lim-Optimum Dynamics

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into by the parties, and dated November 11, 2002, and having been duly sworn and the oral hearings having been waived in accordance with the Rules, and having fully reviewed and considered the written documents submitted to me by American President Lines, Ltd. and APL Co., PTE, Ltd., and Ed Lim-Optimum Dynamics having failed to submit documents after due notice by mail in accordance with the Rules hereby, AWARD, as follows:

This arbitration was instituted by Claimants American President Lines, Ltd. and APL Co., PTE, Ltd. to collect amounts alleged to be owed by Respondent Ed Lim-Optimum Dynamics under a service contract for the shipment of automobiles from the United States to the Philippines.

Respondent Ed Lim initially objected to arbitration in an e-mail to the American Arbitration Association ("AAA"), denying that he signed the contracts at issue in this arbitration. Respondent did not further participate in the arbitration although provided an opportunity to do so. This arbitration proceeded by way of submission of documents only and Respondent could have submitted evidence and materials for the Arbitrator to consider, beyond the sole e-mail he sent to the AAA.

The contract was submitted into evidence by Claimants, and was identified as Service Contract No. WB 02/0331. The original signatory to the contract was "Eddie Lim" of 61 Belmar Street, Daly City, CA 94015. Service Contract No. WB 02 /0331 was subsequently amended to identify Optimum Dynamics, Inc. as a contracting party; however, the amendment was executed by "Eddie Lim" without any designation of a representational capacity for that company. Claimants also submitted into evidence an unsigned version of the amendment which identified "Ed Lim" as the person signing; the executed copy, however, identified "Eddie Lim" as the person signing the amendment. In the amendment, the address for Optimum Dynamics, Inc. was 61 Belmar Street, Daly City, CA 94015.

Claimants submitted a Lexis-Nexis database search of public records which showed that Respondent Ed Lim's address from May of 2002 to November of 2003 was 61 Belmar Avenue, Daly City, CA 94105-1207. The original contract was signed on October 30, 2002 and the

amended contract was signed on November 11, 2002, during the time Respondent reportedly lived at the Belmar Avenue address. Both the original and amended versions of the contract provided for the shipment of automobiles to ports in the Philippines. In his e-mail to the AAA, Respondent indicated he could be contacted at his office in the Philippines. Based on the preponderance of evidence submitted, the Arbitrator finds that Respondent executed the original and amended contract, signing as "Eddie Lim."

In paragraphs 3.(a) and (b), the contract required that Respondent ship a minimum amount of freight during the term of the contract and pay liquidated damages upon a failure to do so:

> 3. MINIMUM VOLUME COMMITMENT; DEAD FREIGHT; BOOKING
>
> (a)  Merchant shall tender not less than the MVC during the term hereof. Shipments shall be deemed within the scope of this contract and shall be counted toward the MVC if made by Merchant's parent, subsidiary, or other affiliated companies or entities under common control, or by an authorized agent in behalf of any such entity, all of which entities must be identified on signature page or Appendix. Merchant shall remain responsible to carrier for all obligations of non-merchant parties shipping cargo under this agreement.
>
> (b)  If Merchant fails to tender shipments in sufficient quantity to meet Merchant's undertaking as set forth in the foregoing paragraph (a), Merchant shall, within 30 calendar days of receipt of Carrier's invoice therefor, pay deadfreight in the amount of $350 for each FEU by which the Minimum Volume Commitment exceeds the volume actually tendered.

Claimant's Exhibit A. "MVC" is defined elsewhere in the contract as "Minimum Volume Commitment." The term "FEU" is not defined in the contract; however, Claimants submitted the Declaration of Sandra Elrod, Manager of Regional Support for North America for Claimants, with evidence that FEU refers to a "40 foot equivalent unit."

In both the original and the amended contract, Respondent contracted to ship a minimum of 25 FEUs. Upon completion of the contract, Respondent had shipped only two FEUs. Under paragraph 3 of the contract quoted above, Claimants are therefore entitled to liquidated damages of $350.00 for each of the 23 shipments Respondent failed to make, or a total liquidated damages award of $8,050.00. Claimants are also entitled to an award of their attorneys fees, as provided in paragraph 4 of the contract (this provision being unchanged in the amendment). Claimants have requested fees of $2,700.00, which the Arbitrator finds to be reasonable.

As Claimants are the prevailing parties, pursuant to paragraph 4 of both the original and amended contract, the administrative fees and Arbitrator compensation shall also be borne by Respondent.

Respondent is therefore ordered to pay the following amounts:

| | |
|---|---:|
| Liquidated damages pursuant to the contract: | $ 8,050.00 |
| Attorney's fees: | 2,700.00 |
| **Total:** | **$10,750.00** |

The administrative fees of the American Arbitration Association totaling $750.00, and the compensation of the arbitrator totaling $950.00 shall be borne by Respondent. Therefore, Respondent shall reimburse Claimant the additional sum of One Thousand Seven Hundred Dollars and Zero Cents ($1,700.00), representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Claimant.

This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby, denied.

Dated: September 12, 2007

DIANA L. VAN DE CAR,
Arbitrator